

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| JTCO, INC., | § § | Case No. 02-44502 |
| Debtor. | § § § | (Chapter 11) |
| BRUCE ZARAT, PLAN TRUSTEE FOR THE ESTATE OF JTCO, INC., | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Adv. No. 04-4202 |
| KINZEL ENTERPRISES; CITY OF RICHARDSON, ACCOUNT #81669; and KENNETH MAUN, TAX ASSESSOR-COLLECTOR COLLIN COUNTY ACCOUNT #R-2294-00A-002B-1, | § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OF DECISION REGARDING
## MOTION FOR SUMMARY JUDGMENT BY CITY OF RICHARDSON[1]

Bruce Zarat (the "Plan Trustee") brings this adversary proceeding as the trustee for JTCO, Inc. (the "Debtor") under the Debtor's confirmed plan. He seeks to recover several payments totaling $19,200.22 as preferential or fraudulent transfers pursuant to 11 U.S.C. §§ 547, 548 and TEX. BUS. & COM. CODE ANN. §§24.001 *et seq*. This matter is before the Court on the Motion for Summary

---

[1] This Memorandum of Decision is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other evidentiary doctrines applicable to the specific parties in this proceeding.

Judgment (the "Motion") filed by the City of Richardson (the "Defendant").[2] The Court heard oral arguments regarding the Motion on February 10, 2005. At the conclusion of the hearing, the Court took the Motion under advisement.

## I. JURISDICTION

A proceeding to determine, avoid or recover preferences or fraudulent transfers raises a core matter over which this Court has jurisdiction to enter a final order. 28 U.S.C. §§ 157(b)(2)(F), (H) and 1334.

## II. SUMMARY JUDGMENT STANDARD

Motions for summary judgment are authorized by Rule 56 of the Federal Rules of Civil Procedure, as adopted and applied to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure. The entry of a summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). If a summary judgment motion is properly supported, a party opposing the motion may not merely rest upon the contents of its pleadings, but must demonstrate the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986) (citing FED. R. CIV. P. 56(e)). To

---

[2] At a hearing on November 2, 2004, regarding a motion to dismiss filed by the Defendant, the Court indicated that it would deem the Defendant's request for dismissal to be a request for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Court instructed the Defendant and the Plan Trustee to submit additional briefing and evidence in support of their respective positions.

determine whether summary judgment is appropriate, the record is reviewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Local District Court Rule CV-56 (made applicable to this proceeding by Local Bankruptcy Rule of Procedure 7056) provides that the party moving for summary judgment must include in its motion a "Statement of Material Facts." A party opposing a motion for summary judgment must file a "Statement of Genuine Issues" in response to the movant's statement of material facts, with specified references to proper summary judgment evidence indicating that a genuine issue of material fact exists. In resolving a summary judgment motion, any material facts claimed by the moving party and supported by admissible evidence are admitted by the non-movant, unless the non-movant timely controverts such material facts with proper summary judgment evidence of its own.

In this case, the affidavits and admissible evidence submitted with the Motion and the response by the Plan Trustee produce the following body of uncontested facts:

### III. UNCONTESTED FACTS

Prior to bankruptcy, the Debtor owned and operated automobile service facilities in the South and Southwest under the trade name "America's Service Station." The Debtor or its parent, NASC Enterprises, Inc., leased twenty-three American Service Station sites. Under the terms of the leases, the Debtor was

liable to the landlords for the payment of certain real property taxes.[3]

The Debtor sold and assigned its interest in the twenty-three American Service Stations to ProCare Automotive Service Solutions, LLC ("ProCare") for $3.6 million pursuant to an Asset Purchase Agreement dated May 31, 2002. At the time of the sale, the Debtor had not yet paid the real property taxes for 2001 relating to the leased sites.

As a condition precedent to the sale, Section 5.4(c) of the Asset Purchase Agreement required the Debtor to obtain "estoppel certificates" executed by all lessors.[4] In order to obtain the required certificates and the lessors' consent to the assumption and assignment of the leases to ProCare, the Debtor promised each of the lessors that it would fulfill its contractual obligation to pay the outstanding 2001 property taxes relating to each of the leased properties. The Debtor agreed that the landlords would be paid at or around the closing of the Asset Purchase Agreement with a portion of the sale proceeds.

Additionally, the Asset Purchase Agreement contained several provisions allowing offsets against the purchase price. Among other offsets, Section 2.5 of the Asset Purchase Agreement allowed ProCare to offset the Debtor's prorated

---

[3] Although the Plan Trustee and the Defendant stipulated to this provision of the leases, including the lease in question, they did not submit the leases as part of the summary judgment record.

[4] An "estoppel certificate" is defined as follows:

"A signed statement by a party (such as a tenant or a mortgagee) certifying for another's benefit that certain facts are correct, as that a lease exists, that there are no defaults, and that rent is paid to a certain date. • A party's delivery of this statement estops that party from later claiming a different state of facts."

BLACK'S LAW DICTIONARY (8th ed. 2004)

**MEMORANDUM OF DECISION – Page 4**

share of the estimated 2002 real property taxes against the cash price of the sale. After deducting this and several other agreed-upon offsets from the $3.6 million purchase price, the Debtor was to receive $1,867,581 in cash and a promissory note in the amount of $1,158,416.

ProCare transferred the cash portion of the sales price into an escrow account with Charter Title Company. After paying taxes, closing costs and secured creditors' claims, Charter Title Company transferred $562,372.81 to the Debtor. The Debtor used the funds to pay its operating expenses.[5]

The Defendant, the City of Richardson, received a payment of $3,528.50 on June 21, 2002. The payment was for 2001 taxes on a real property tract assessed in the name of Kinzel Enterprises, Ltd. Charter Title Company made the payment.

On August 19, 2002, the Debtor filed for bankruptcy protection under Chapter 7 of the Bankruptcy Code. On May 30, 2003, the case was converted to a case under Chapter 11 of the Bankruptcy Code. A significant asset of the Debtor's estate was the note payable from ProCare. In Section 8.1 of the Debtor's confirmed plan, which dealt with executory contracts and unexpired leases, the Debtor expressly "preserved" its rights under the Asset Purchase Agreement.

## IV. DISCUSSION

A.    11 U.S.C. §547(b)

Section 547 of the Bankruptcy Code permits a trustee to avoid certain pre-

---

[5] These events are described on pages 10-11 of the Debtor's Amended Disclosure Statement, which was filed in the underling bankruptcy case on May 3, 2004 [Docket No. 198]. The Court approved the Debtor's Amended Disclosure Statement on May 25, 2004 [Docket No. 210], and confirmed the Debtor's First Amended Joint Plan of Reorganization on July 16, 2004 [Docket No. 253].

bankruptcy transfers as "preferences." The elements of a preference are set out in §547(b), providing:

> [T]he trustee may avoid any transfer of an interest of the debtor in property—
>   (1) to or for the benefit of a creditor;
>   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>   (3) made while the debtor was insolvent;
>   (4) made—
>     (A) on or within 90 days before the date of the filing of the petition; or
>     (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>   (5) that enables such creditor to receive more than such creditor would receive if—
>     (A) the case were a case under chapter 7 of this title;
>     (B) the transfer had not been made; and
>     (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). Once a trustee proves the elements of a preferential transfer, the defendant must establish one of the exceptions contained in §547(c) to prove the nonavoidability of the transfer. *See* 11 U.S.C. § 547(g).

Here, the Defendant argues that the Plan Trustee, as a matter of law, cannot establish that it received a transfer of an interest in property from the Debtor. The Defendant alleges that it was paid by Kinzel Enterprises, Ltd. (the "Landlord") for the taxes assessed on the Landlord's property from the Landlord's own funds, which were being held by Charter Title Company for the Landlord. However, the Defendant's affidavits reflect that Charter Title Company made payments directly to the Defendant, and the Defendants' evidence does not establish that Charter

**MEMORANDUM OF DECISION – Page 6**

Title Company acted as an agent for the Landlord. *Cf: Ross v. Penny (In re Villa Roel, Inc.)*, 57 B.R. 879 (Bankr. Dist. D.C. 1985) (lessor/defendant received a preference where debtor made payment from proceeds of sale of business directly to lessor/defendant).

Reviewing the record in the light most favorable to the Plan Trustee (as the non-movant), and assuming the Plan Trustee can establish that the funds transferred by Charter Title Company were property of the Debtor, the Court turns to the elements of §547(b). There is no question that the Landlord was a creditor of the Debtor and benefited from the payment of the real estate taxes -- the Landlord, as the property owner, was personally liable for the taxes imposed on his property. *See* TX. TAX CODE § 32.07. The disputed payments were made less than ninety days prior to the Debtor's bankruptcy, while the Debtor was presumed to be insolvent, and the payments were made on account of an antecedent debt owed to the Landlord under the lease agreement. *See* 11 U.S.C. §547(f).

In their oral arguments regarding the Motion, the parties focused on whether the Plan Trustee had satisfied the final element of §547(b), that is, they disputed whether the Defendant had received more than it "would receive if (A) the case were a case under chapter 7. . . ; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title." 11 U.S.C. § 547(b)(5). The Plan Trustee alleged at the hearing and on page five of his response to the Motion that the Defendant was a creditor of the Landlord, not the Debtor. Thus, the Plan Trustee argued that the

Defendant would not have received a distribution from the Debtor in a hypothetical Chapter 7 case and that any payment received by virtue of the Asset Purchase Agreement was a preferential transfer.

The Plan Trustee's argument presents a faulty application of §547(b). The creditor referenced in §547(b)(5) is the same creditor for whose benefit the transfer was made in §547(b)(1), *i.e.*, the Landlord. *See, e.g., Broad St. Assoc. v. United Cos. Life Ins. (In re Broad St. Assoc.)*, 163 B.R. 68, 74 (Bankr. E.D. Va. 1993). It appears to the Court that the parties' dispute regarding §547(b)(5) is more properly framed as a question of whether the transfers to the Defendant enabled *the Landlord*, as the creditor for whose benefit the payments were made, to receive more than it would have received in a hypothetical Chapter 7 case. If the Court determines that the Plan Trustee has satisfied §547(b)(5) and that the transfers were preferential as to the Landlord, then the Court must consider (i) the defenses to recovery asserted by the Defendant under §547(c)(1) and (c)(2), and (ii) whether the Defendant is protected by §550(b) of the Bankruptcy Code.[6]

Section 547(b)(5) has been construed to mean that the bankruptcy court must determine the relative positions of the creditors on the date a petition is filed. *See Palmer Clay Prods. Co. v. Brown*, 297 U.S. 227, 229 (1936). In interpreting the preference provision of the former Bankruptcy Act, the Supreme Court observed that the preferential effect of the payment must be determined "not by

---

[6] The Plan Trustee's complaint does not specify whether he is proceeding under §550(a)(1), relating to the recovery of certain transfers from debtors to initial transferees, or §550(a)(2), relating to the recovery of certain transfers made from initial transferees to subsequent transferees.

**MEMORANDUM OF DECISION** – Page 8

what the situation would have been if the debtor's assets had been liquidated and distributed among his creditors at the time the alleged preferential payment was made, but by the actual effect of the payment as determined when bankruptcy results." *Id.* Bankruptcy courts should consider the actual facts of the bankruptcy case in determining the actual effect of a transfer: "The hypothetical liquidation under section 547(b)(5) should not ... be conducted in a vacuum." *In re LCO Enters.,* 137 B.R. 955, 959 (9th Cir. BAP 1992) (Perris, J., concurring).

In this case, for purposes of the §547(b)(5) analysis, the Court must consider what the Landlord would have received in a hypothetical Chapter 7 case if the disputed payments had not been made. If the Debtor had not promised to cure the existing defaults under the leases for the twenty-three America's Service Station sites, including the lease in question, by satisfying the 2001 tax assessments, neither this Landlord nor any other landlord would have signed estoppel certificates consenting to the assignment of the leases to ProCare. Since obtaining estoppel certificates from the landlords was a condition precedent to the Asset Purchase Agreement, the sale to ProCare would not have occurred, and a hypothetical Chapter 7 trustee would have been faced with selling the Debtor's assets in the bankruptcy case.

The Plan Trustee argues, summarily, that the Landlord would have held only an unsecured claim against the Debtor in the hypothetical Chapter 7 case and would have been "stuck" with paying the tax bills itself. This argument ignores the fact that, in this case, the leases for the twenty-three America's Service Station

sites were net assets with a significant value beyond the liabilities associated with them, as demonstrated by the Asset Purchase Agreement. In light of the Debtor's "preservation" of the Asset Purchase Agreement in its plan, the hypothetical Chapter 7 trustee would have maximized the value to the estate by selling the leases to ProCare through the Asset Purchase Agreement. Such a sale would have required the post-petition assumption of the leases pursuant to §365(a) of the Bankruptcy Code, which, in turn, would have required the hypothetical Chapter 7 trustee to cure any existing defaults under the leases pursuant to §365(b).

The Plan Trustee's argument that the payments benefiting the Landlord were preferential contradicts the reasoning of other bankruptcy courts in cases involving the post-petition assumption of executory contracts and unexpired leases under §365 of the Bankruptcy Code. Similar to debtors and trustees who have sought to recover the "cure" payments required by §365(b)(1) as preferential transfers, the Plan Trustee here wants the benefit of the assignment of the lease to ProCare through the Asset Purchase Agreement but also wants to recover the payments necessary to cure the existing defaults under the lease and effectuate the assignment. Numerous courts have rejected the argument that §547(b) trumps the "cure" requirement of §365(b). *See Seidle v. GATX Leasing Corp.,* 778 F.2d 659, 660 (11th Cir.1985); *In re LCO Enter.*, 137 B.R. 955 (Bankr. 9th Cir. 1992), aff'd, 12 F.3d 938 (9th Cir. 1993); *In re Superior Toy & Mfg. Co.,* 78 F.3d 1169, 1174 (7th Cir. 1996); *Kimmelman v. Prot Authority of N.Y. & N.J. (In re Kiwi Int'l Air Lines, Inc.),* 344 F.3d 311 (3rd Cir. 2003); *MMR Holding Corp. v. C & C*

*Consultants, Inc. (In re MMR Holding Corp.),* 203 B.R. 605, 613 (Bankr. M.D. La.1996)*; In re Philip Serv. (Delaware), Inc.*, 284 B.R. 541, 551-552 (Bankr. D. Del. 2002). Additionally, the Plan Trustee has provided this Court with no authority supporting his attempt to "cherry pick" from the Asset Purchase Agreement by avoiding certain transfers that occurred as a necessary part of the whole transaction. *See, e.g., Pieco, Inc. v. Atlantic Computer Sys., Inc. (In re Atlantic Computer Sys., Inc.),* 173 B.R. 844, 849 (S.D.N.Y. 1994) (noting that a debtor may not "cherry-pick" pieces of a contract it wishes to assume or reject); *Philip Services Corp., et al., v. Luntz (In re Philip Services (Delaware), Inc.)*, 248 B.R. 541 (Bankr. D. Del. 2002) (holding that debtors assumed merger agreement in their plan and could not recover payments made pursuant to merger agreement as preferential transfers).

The Fifth Circuit has repeatedly recognized that summary judgment is proper "where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof. A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Washington v. Armstrong World Indus*., 839 F.2d 1121, 1122 (5th Cir. 1988) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 323). "If the party with the burden of proof cannot produce any summary judgment evidence on an essential element of his claim, summary judgment is required." *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990). Here, the Plan Trustee has not submitted any evidence establishing that the Landlord received

more than it would have received in a Chapter 7 liquidation. The Court, therefore, concludes that the Plan Trustee has failed to set forth specific facts that establish a *prima facie* case under §547(b), and his claims should not survive summary judgment. *Celotex*, 477 U.S. at 322-23; *Giles v. Gen. Elec. Co.,* 245 F.3d 474, 494 (5th Cir. 2001).

### B. 11 U.S.C. §548 and TEX. BUS. & COM. CODE ANN. §§24.005(a)(2) and 24.006(a)

In order to recover a fraudulent transfer, a trustee must either show the transfer was made with the actual intent to hinder delay or defraud creditors or show the transfer was made without receiving reasonably equivalent value while the debtor was insolvent. *See* 11 U.S.C. §548(a); TEX. BUS. & COM. CODE ANN. §§24.005 and 24.006. In this adversary proceeding, the Plan Trustee alleges that the Defendant received a constructively fraudulent transfer. In particular, the Plan Trustee alleges that the Debtor satisfied the tax liens on the leased property while it was insolvent and that the Debtor did not receive any value in exchange since the Debtor did not own the property. *See* 11 U.S.C. §548(a)(1)(B); TEX. BUS. & COM. CODE ANN. §§24.005(a)(2) and 24.006(a).

The burden of establishing the existence of the elements of a voidable transfer rests on the trustee. *See, e.g., In re GWI PCS I, Inc.*, 230 F.3d 788 (5th Cir. 2000); *Murphy v. Suir*, 16 F.2d 269 (5th Cir. 1926). Here, however, the Plan Trustee concedes that the Debtor was liable to the Landlord for the 2001 property taxes. Any tax payments made by the Debtor with its funds satisfied an obligation

to the Landlord under the lease agreement and enabled the Debtor to assign the lease to ProCare.  Satisfaction of a debt is recognized as value in the Bankruptcy Code and in cases interpreting the Texas Uniform Fraudulent Transfer Act, and, therefore, any such transfer would have been for reasonably equivalent value. *See* 11 U.S.C. §548(d)(2)(A); *see also Hawes v. Central Tex. Prod. Credit Ass'n,* 503 S.W.2d 234, 235-36 (Tex. 1973) (notwithstanding TEX. BUS. & COM. CODE ANN. §24.001 *et seq.*, conveyance of property by an insolvent debtor to unsecured creditor in payment of debt valid if value of the property does not exceed amount of debt and grantee creditor receives conveyance in good faith).

### V. CONCLUSION

For the foregoing reasons, the Court concludes the Motion should be granted and summary judgment should be entered for the Defendant as to the Plan Trustee's claims against it.  The Court will enter an appropriate judgment incorporating this Memorandum of Decision.  This Memorandum of Decision constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.[7]

Signed on 9/30/2005

*Brenda T. Rhoades*    MD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

---

[7] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such.  To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.  The Court reserves the right to make additional findings as necessary or as requested by any party.